UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-CV-24956

ROGELIO RIVERO ALEMAN,

　　　　Plaintiff,

vs.

A & J GENERAL CONTRACTORS CORP.,
MIGUEL A. GUERRERO, SR., and
MIGUEL A. GUERRERO, JR.,

　　　　Defendants.
_____/

## COMPLAINT

Plaintiff, Rogelio Rivero Aleman, sues Defendants, A & J General Contractors Corp., Miguel A. Guerrero, Sr., and Miguel A. Guerrero, Jr., as follows:

### *Parties, Jurisdiction, and Venue*

1. **Plaintiff, Rogelio Rivero Aleman**, is over 18 years old and has been a *sui juris* resident of Miami-Dade County, Florida, at all times material.

2. **Defendant, A & J General Contracting Corp. ("A&J"),** is a *sui juris* Florida for-profit corporation that conducted its general contracting, construction, and roofing business in Miami-Dade County, Florida, at all times material, where it maintained its principal place of business and owed real property.

3. **Defendant, Manuel A. Guerrero, Sr.,** was at all times material an owner/officer/director/member of A&J, for the time period relevant to this lawsuit. He ran A&J's day-to-day operations, was responsible for all operational decisions, was partially or totally responsible for paying Plaintiff's wages and the issuance of information returns.

4. **Defendant, Manuel A. Guerrero, Jr.,** was at all times material an owner/officer/director/member of A&J for the time period relevant to this lawsuit. He ran A&J's day-to-day operations, was the qualifier for A&J, was responsible for all operational decisions, and was partially or totally responsible for paying Plaintiff's wages and the issuance of information returns.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Defendants transact business in this District, because Defendants, maintained their principal places of business in this District, because Plaintiff worked and was due to be paid in Miami-Dade County, and because most if not all of the operational decisions were made in this District.

6. This Court has original jurisdiction over Plaintiff's federal question claims pursuant to 28 U.S.C. §1331 26 U.S.C. §201, *et seq.*, and 26 U.S.C. §7434.

7. Any/all condition(s) precedent to filing this lawsuit occurred and/or was satisfied by Plaintiff.

8. Plaintiff retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

## COUNT II - FLSA MINIMUM WAGE VIOLATION(S)

Plaintiff, Rogelio Rivero Aleman, reincorporates and re-alleges paragraphs 1 through 8 as though set forth fully herein and further alleges as follows:

9. Defendants were Plaintiff's direct employers, joint employers and co-employers for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. §203(d).

10. Defendants regularly employed two or more employees for the relevant time period that handled goods or materials that travelled through interstate commerce, or used

instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered by the Fair Labor Standards Act.

11. Defendants have been at all times material engaged in interstate commerce in the course of their provision of general contracting, construction, and roofing which, traditionally, cannot be performed without using shingles, roof tiles, felt, tar, adhesives, fasteners, vehicles, wood, goods, materials, supplies, and equipment that have all moved through interstate commerce.

12. Defendants also engage in interstate commerce in the course of their submission of billings and receipt of payment involving out-of-state payors.

13. Furthermore, Defendants obtain, solicit, exchange and send funds to and from outside of the State of Florida, regularly and recurrently use telephonic transmissions going outside of the State of Florida to conduct business, and transmit electronic information through computers, the internet, via email, and otherwise outside of the State of Florida in the course of their business.

14. Defendants' annual gross revenues derived from this interstate commerce are believed to be in excess of $500,000.00 for the relevant time period.

15. Plaintiff was an hourly employee of Defendants, as the term "employee" is defined by 29 U.S.C. §203(e).

16. Plaintiff was a non-exempt employee of Defendants.

17. Plaintiff consents to participate in this lawsuit.

18. Defendants hired Plaintiff to work for them as a driver to also perform general labor and roofing labor for them.

19. Plaintiff hauled roofing materials, adhesives, fasteners, and supplies, that traveled

in interstate commerce prior to Plaintiff's transportation of same.

20. During this time, Plaintiffs regularly and routinely utilized vehicles, cellular telephones, fuel, oil, and other goods and supplies that moved through interstate commerce.

21. Plaintiff worked for Defendants from about 2015 to April 20, 2019, when he was injured on the job. To the extent that records exist regarding the exact dates of Plaintiff's employment exist, such records are in the exclusive custody of Defendants.

22. Plaintiff would start his workday for Defendants by first picking up other employees for Defendants to drive them to Defendants' warehouse and then to the jobsite(s), with the first pickup commencing at around 5:15 a.m.

23. Plaintiff would then end his workday by then driving to the warehouse to unload the work truck owned by Defendants, and oftentimes would then drive one or more employees home for the benefit Defendants, completing his workday.

24. Plaintiff worked for Defendants for six to seven days each week for over 12 hours each day.

25. Defendants would pay Plaintiff a day rate that ranged from $80 to $100, regardless of the hours worked.

26. Defendants paid Plaintiff his day rate for each day worked on a weekly basis, with a small part of his wages made by check and with the remainder of his wages paid in cash.

27. When considering all of the hours that Defendants required Plaintiff to work, and the daily rate(s) of pay, Defendants failed and refused to pay Plaintiff an hourly wage at or above the applicable minimum wage for all of the hours that he worked.

28. Defendants willfully and intentionally refused to pay Plaintiff wages at or above the applicable minimum wage for each of the hours he worked during the relevant time period.

4

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
tel 305.230.4884   fax 305.230.4844
*www.fairlawattorney.com*

29. Defendants either recklessly failed to investigate whether their failure to pay Plaintiff at least the applicable minimum wage for the hours he worked during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Plaintiff to believe that Defendants were not required to pay him at least the applicable minimum wage rate, and/or Defendants concocted a scheme pursuant to which the deprived Plaintiff the applicable minimum wage pay earned.

30. Plaintiff is entitled to a backpay award of minimum wages for all hours he worked, plus an equal amount as a penalty, plus all attorneys' fees and costs.

WHEREFORE Plaintiff, Rogelio Rivero Aleman, demands the entry of a judgment in his favor and against Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., jointly and severally after trial by jury, and as follows:

   a. That Plaintiff recover compensatory minimum wage damages and an equal amount of liquidated damages as provided under the law and in 29 U.S.C. § 216(b);

   b. That Plaintiff recover pre-judgment interest on all unpaid minimum wages if the Court does not award liquidated damages;

   c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses pursuant to the FLSA;

   d. That Plaintiff recover all interest allowed by law;

   e. That Defendants be Ordered to make Plaintiff whole by providing appropriate minimum pay and other benefits wrongly denied in an amount to be shown at trial and other affirmative relief;

  f. That the Court declare Defendants to be in willful violation of the minimum wage provisions of the FLSA; and

  g. Such other and further relief as the Court deems just and proper.

## COUNT II - FLSA OVERTIME WAGE VIOLATION(S)

Plaintiff, Rogelio Rivero Aleman, reincorporates and re-alleges paragraphs 1 through 8 as though set forth fully herein and further alleges as follows:

31. Defendants were Plaintiff's direct employers, joint employers and co-employers for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. §203(d).

32. Defendants regularly employed two or more employees for the relevant time period that handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered by the Fair Labor Standards Act.

33. Defendants have been at all times material engaged in interstate commerce in the course of their provision of general contracting, construction, and roofing which, traditionally, cannot be performed without using shingles, roof tiles, felt, tar, adhesives, fasteners, vehicles, wood, goods, materials, supplies, and equipment that have all moved through interstate commerce.

34. Defendants also engage in interstate commerce in the course of their submission of billings and receipt of payment involving out-of-state payors.

35. Furthermore, Defendants obtain, solicit, exchange and send funds to and from outside of the State of Florida, regularly and recurrently use telephonic transmissions going outside of the State of Florida to conduct business, and transmit electronic information through

computers, the internet, via email, and otherwise outside of the State of Florida in the course of their business.

36. Defendants' annual gross revenues derived from this interstate commerce are believed to be in excess of $500,000.00 for the relevant time period.

37. Plaintiff was an hourly employee of Defendants, as the term "employee" is defined by 29 U.S.C. §203(e).

38. Plaintiff was a non-exempt employee of Defendants.

39. Plaintiff consents to participate in this lawsuit.

40. Defendants hired Plaintiff to work for them as a driver to also perform general labor and roofing labor for them.

41. Plaintiff hauled roofing materials, adhesives, fasteners, and supplies, that traveled in interstate commerce prior to Plaintiff's transportation of same.

42. During this time, Plaintiffs regularly and routinely utilized vehicles, cellular telephones, fuel, oil, and other goods and supplies that moved through interstate commerce.

43. Plaintiff worked for Defendants from about 2015 to April 20, 2019, when he was injured on the job. To the extent that records exist regarding the exact dates of Plaintiff's employment exist, such records are in the exclusive custody of Defendants.

44. Plaintiff would start his workday for Defendants by first picking up other employees for Defendants to drive them to Defendants' warehouse and then to the jobsite(s), with the first pickup commencing at around 5:15 a.m.

45. Plaintiff would then end his workday by then driving to the warehouse to unload the work truck owned by Defendants, and then oftentimes would drive one or more employees home for Defendants, when he would complete his workday.

46. Plaintiff worked for Defendants for six to seven days each week.

47. Defendants would pay Plaintiff a day rate that ranged from $80 to $100 per day, regardless of the hours worked each day.

48. Defendants paid Plaintiff on a weekly basis for all hours worked in part by check and in part in cash.

49. Plaintiff would regularly and routinely work more than 40 hours in a workweek for Defendants.

50. Defendants failed and refused to pay Plaintiff overtime wages calculated at time and one-half times his regular hourly rate(s) of pay for all of the hours that he worked over 40 hours in a given workweek.

51. Defendants willfully and intentionally refused to pay Plaintiff wages at a rate of time and one-half times his regular rate of pay for each of the overtime hours he worked during the relevant time period by paying Plaintiff in cash for all hours worked over 80 in a pay period at their gas station at his regular rate of pay.

52. Defendants either recklessly failed to investigate whether their failure to pay Plaintiff an overtime wage for the hours he worked during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Plaintiff to believe that Defendants were not required to pay an overtime rate, and/or Defendants concocted a scheme pursuant to which the deprived Plaintiff the overtime pay earned.

53. Plaintiff is entitled to a backpay award of overtime wages for all overtime hours he worked, plus an equal amount as a penalty, plus all attorneys' fees and costs.

WHEREFORE Plaintiff, Rogelio Rivero Aleman, demands the entry of a judgment in his favor and against Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., jointly and severally after trial by jury, and as follows:

a. That Plaintiff recover compensatory overtime wage damages and an equal amount of liquidated damages as provided under the law and in 29 U.S.C. § 216(b);

b. That Plaintiff recover pre-judgment interest on all unpaid overtime wages if the Court does not award liquidated damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses pursuant to the FLSA;

d. That Plaintiff recover all interest allowed by law;

e. That Defendants be Ordered to make Plaintiff whole by providing appropriate overtime pay and other benefits wrongly denied in an amount to be shown at trial and other affirmative relief;

f. That the Court declare Defendants to be in willful violation of the overtime provisions of the FLSA; and

g. Such other and further relief as the Court deems just and proper.

### **COUNT III – VIOLATION(S) OF 26 U.S.C. §7434 FOR 2018**

Plaintiff, Rogelio Rivero Aleman, reincorporates and re-alleges paragraphs 1 through 8 as though set forth fully herein and further alleges as follows:

54. Plaintiff performed worked for Defendants during calendar year 2018.

55. Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., each had an obligation to provide correct information returns to the IRS and to the Plaintiff.

56. Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., paid Plaintiff and so are directly responsible for the issuance of checks to Plaintiff(s), the payment of taxes to the IRS based on the wages earned by and paid to Plaintiff, the accurate reporting of all income paid as to Plaintiff as wages, the issuance of correct W-2's to Plaintiff for each calendar year during which he performed work for Defendants, and the filing of correct information returns on own behalf of the corporate Defendants.

57. Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., normally paid Plaintiff by check for some of the hours he worked in a weekly pay period in 2018.

58. During the time that Plaintiff worked for Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., they also paid Plaintiff in cash in 2018 for the remainder of the hours he worked.

59. Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., did not include the amounts that they paid to Plaintiff in the cash in 2018 in any information returns relating to the wages earned by (or paid to) Plaintiff, such as the Form W-2 that Defendants issued to Plaintiff for calendar year 2018.

60. Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., willfully and intentionally served/filed/provided Plaintiff with a fraudulent and/or false IRS Form 2018 for calendar year 2018 by underreporting the amount they paid to Plaintiff in calendar year 2018.

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
tel 305.230.4884   fax 305.230.4844
*www.fairlawattorney.com*

61.     Plaintiff suffered damages as a result of Defendants' willful provision of false information returns in 2018 caused by Defendants' intentional and willful acts as described above.

62.     Section 7434 of 26 U.S.C. provides, in pertinent part, as follows:

**(a) In general**
If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

**(b) Damages** In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—

> (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing),
>
> (2) the costs of the action, and
>
> (3) in the court's discretion, reasonable attorneys' fees.

WHEREFORE Plaintiff, Rogelio Rivero Aleman, demands the entry of a judgment in his favor and against Defendants, A & J General Contracting Corp., Manuel A. Guerrero, Sr., and Manuel A. Guerrero, Jr., jointly and severally after trial by jury and as follows:

  a. That Plaintiff recover the greater of $5,000 for each fraudulent information return filed/served by Defendants in 2018 as set forth above;

  b. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses pursuant to 26 U.S.C. §7434;

  c. That Plaintiff recover all interest allowed by law; and

  d. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Rogelio Rivero Aleman, demands a trial by jury of all issues so triable.

Respectfully submitted this 2nd day of December 2019,

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
7300 North Kendall Drive
Suite 450
Miami, FL 33156
Tel:    305.230.4884
*Counsel for Plaintiff*
